## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY EARL GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  2:14-cv-01562-SGC |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Anthony Earl Grant, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Grant timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Grant has at least a high school education and has previously worked as a baggage handler, material handler, and cook supervisor.  (Tr. at 213).  In his applications for DIB and SSI, Grant alleged he became disabled on June 1, 2009, as a result of heart problems, lower back problems, bone problems, high blood pressure, depression, migraines, and nerve problems.  (*Id.* at 169, 207, 212).  After his claims were denied, Grant requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 90-95, 99-106).  Following a hearing, the ALJ denied Grant's claims.  (*Id.* at 30-46).  Grant was 56 years old when the ALJ issued his decision.  (*Id.* at

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

46, 207).   After the Appeals Council declined to review the ALJ's decision (*id.* at 1-6), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001 (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Grant initiated this action.   (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, a DIB claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).   The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."   *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012).   If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b).   At the first step, the ALJ determined Grant met the Social Security Administration's insured status requirements

2

through September 30, 2012, and has not engaged in substantial gainful activity since his alleged onset date of June 1, 2009.  (Tr. at 35).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Id.* at §§ 404.908, 416.908; *see also* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a).  A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling.  20 C.F.R. §§ 404.1523, 416.923.  The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b), 416.921(b).

§§ 404.1512(a) and (c), 416.912(a) and (c).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Grant has the following severe impairments: chronic pain secondary to arthritis, left lung granulomas, a right lung defect, cardiomegaly status post myocardial infarction and 2007 catheterization, costochondritis, hypertension, status post transischemic attack, and obesity.  (Tr. at 35-36).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* at §§ 404.1525-26, 416.925-26.  The claimant bears the burden of proving his impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  20 C.F.R §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Grant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 36-37).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  *Id.* at §§ 404.1520(e), 416.920(e); *see also id.* at §§ 404.1545, 416.945.  A claimant's RFC is the most he can do despite his impairments.  *See id.* §§ 404.1545(a)(1), 416.945(a)(1).  At the fourth step, the Commissioner will compare his assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b), 416.920(a)(4)(iv) and (e),

416.960(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* §§ 404.1560(b)(1), 416.960(b)(1).  The claimant bears the burden of proving his impairment prevents him from performing his past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3), 416.920(a)(4)(iv), 416.960(b)(3).  Before proceeding to the fourth step, the ALJ determined Grant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[3] except he can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; can sit, stand, and walk six hours each, intermittently throughout an eight-hour workday; is limited to occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, stairs, and ramps; may balance frequently; must avoid concentrated exposure to extreme temperatures; must avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; and must avoid concentrated exposure to operational controls of moving machinery and unprotected heights.  (Tr. at 37-44).  At the fourth step, the ALJ determined Grant is able to perform his past relevant work as a cook supervisor.  (*Id.* at 44-45).  Nonetheless,[4] the ALJ proceeded to the fifth step and additionally determined that in light of Grant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Grant can perform, such as those of

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[4] Generally, if the claimant can perform his past relevant work, the Commissioner will determine the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 416.920(a)(4)(iv) and (f).  If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1), 416.920(a)(4)(v) and (g)(1), 416.960(c)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.*

order clerk, assignment clerk, hand packer, janitor, and bus person (i.e., dining room attendant). (*Id.* at 45-46). Based on his determinations at steps four and five of the sequential evaluation, the ALJ concluded Grant is not disabled. (*Id.* at 46).

### III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46

(11th Cir. 1991).

## IV. Discussion

On appeal, Grant argues the ALJ failed to evaluate his testimony of pain and its limiting effects properly. (Doc. 10 at 5-8). He further argues the ALJ should have obtained a consultative examination. (*Id.* at 9).

### A. Credibility Determination

During the hearing, Grant testified he has pain in his knees and legs that prevents him from standing for a long period of time, constant chest pain that causes shortness of breath, and high blood pressure that makes him dizzy. (*Id.* at 57-58). He testified he can sit for no more than 20 to 30 minutes before he has to lie down. (*Id.* at 59). He testified he drops objects and that on account of cramping in his fingers and hands, he can barely hold his toothbrush and can comfortably lift no more than five pounds (*Id.*). Finally, he testified he relies on his girlfriend to help him shower, shave, and dress and cannot do household chores or cook. (*Id.* at 59-60).

When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies. *Dyer*, 395 F.3d at 1210; *see also* SSR 96-7p.

> The pain standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Dyer*, 395 F.3d at 1210 (quoting *Holt*, 921 F.2d at 1223); *see also* SSR 96-7p. Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also* SSR 96-7p.

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other

symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so.  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62); *see also* SSR 96-7p.  "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.  In determining credibility, an ALJ may consider objective medical evidence and a claimant's reported daily activities, amongst other things.  20 C.F.R. §§ 404.1529(c), 416.929(c); *see also* SSR 96-7p.

Here, the ALJ found Grant's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with his RFC.  (Tr. at 40).  The ALJ articulated a number of reasons for discrediting Grant's testimony and other statements.

First, the ALJ noted Grant's inconsistent testimony regarding his ability to ambulate.  (*Id.* at 38-39).  When questioned by his attorney, Grant first testified he can walk "[f]or maybe about an hour or more," and then testified he "can walk at least probably about 10 minutes or so, so – without hurting, without having to holding something, to grab something."  (*Id.* at 58).  When later questioned by the ALJ, Grant testified he cannot walk for more than one hour.  (*Id.* at 66).  Grant further testified he rides in a cart at the grocery store.  (*Id.* at 61, 73).  However, he also testified he does not require an assistive device such as a cane or a wheelchair to walk.  (*Id.* at 73).

Second, the ALJ noted Grant's inconsistent testimony regarding his work history.  (*Id.* at 39).  Grant testified he left the last job he held before filing for disability benefits because his impairments prevented him from working.  (*Id.* at 70).  However, he also testified he collected unemployment benefits after leaving that job (*id.* at 70-71), which the ALJ noted suggested an

ongoing ability to work (*id.* at 39).  Furthermore, Grant testified he collected unemployment benefits until they "ran out."  (*Id.* at 70).  However, after the ALJ pointed out that to receive unemployment benefits Grant would have had to represent he was ready, willing, and able to work, Grant changed his testimony, stating he stopped collecting unemployment benefits after letting the administering agency know he was unable to work.  (*Id.* at 71).  Finally, the ALJ noted Grant had some of his highest earnings periods during the time he previously filed claims for disability benefits in 2005 and 2007.  (*Id.* at 39).  This appears to be accurate.  (*Id.* at 186).

Third, the ALJ noted Grant's misrepresentations regarding past drug use and failure to attend two scheduled consultative examinations, despite efforts to reach him and ensure he attended.  During the hearing, Grant testified he had never smoked cigarettes or used illegal drugs.  (*Id.* at 64).  When the ALJ pointed out to Grant that his urine had tested positive for cocaine in 2004, Grant reiterated his testimony he had never used illegal drugs.  (*Id.* at 74-74).  As noted by the ALJ, an analysis of Grant's urine performed on September 16, 2004 tested positive for cocaine and opiates, as did a urinalysis performed on September 21, 2004.  (*Id.* at 313, 318, 329-30, 335).  Furthermore, Grant's medical records document a history of smoking, although he quit some time in 2011.  (*Id.* at 374, 434, 675-76).  The record also documents Grant's failure to attend scheduled consultative examinations after repeated attempts to ensure his attendance.  (*Id.* at 530, 543).

Lastly, the ALJ noted Grant's medical records fail to support the degree of impairment alleged.  (*Id.* at 40-43).  The ALJ characterized Grant's cardiac and respiratory issues as mild or benign.  (*Id.* at 42).  This characterization is supported by substantial evidence.  In 2004, Grant was treated for shortness of breath and atypical chest pain secondary to sinus congestion and cough.  (*Id.* at 318).  Although an electrocardiogram revealed a myocardial infarction, both a

stress test and an echocardiogram were normal.  (*Id.* at 318, 327, 329-30, 352-53).  In June 2005, Grant again presented with chest pain.  (*Id.* at 400).  Imaging revealed a mild left pleural effusion with a low probability of pulmonary embolism and tiny calcified granulomas at the lung bases. (*Id.* at 383-84, 397).  When Grant presented with chest pain in May 2007, a chest x-ray revealed minimal cardiomegaly with a suggestion of slight congestive heart failure.  (*Id.* at 431, 444, 450). A nuclear stress test performed in May 2007 was positive for ischemia.  (*Id.* at 431-32, 434-35, 437, 439-441, 452).   Although Grant initially refused to have a cardiac catheterization, he subsequently consented to that procedure, which was negative for coronary artery disease.  (*Id.* at 431-32, 435, 437).  Grant's cardiac enzymes were negative for acute coronary syndrome.  (*Id.* at 431, 434).  At this time, Grant was noted to have borderline hypertension and diabetes.  (*Id.* at 431).  His blood pressure was stabilized with medication.  (*Id.* at 431).

In August 2010, Grant had normal cardiovascular and respiratory exams.  (*Id.* at 522).  In April 2011, myocardial perfusion imaging revealed normal exercise SPECT myocardial perfusion images and normal left ventricular function.  (*Id.* at 545-56).  When Grant presented with chest pain in January 2012, a chest x-ray revealed mild cardiomegaly and probable early pulmonary edema suggestive of congestive heart failure and/or fluid overload.  (*Id.* at 629). Although an echocardiogram was abnormal, cardiac enzymes were negative for acute myocardial infarction.  (*Id.* at 631-32, 636).  When Grant presented with chest pain in February 2012, chest x-rays showed mild cardiomegaly with no acute disease and no acute pulmonary or pleural disease, and cardiac enzymes were negative for acute myocardial infarction.  (*Id.* at 560, 562, 569, 571-73, 642).  When Grant presented with chest pain in March 2012, a chest x-ray revealed borderline to mild cardiomegaly that was not changed significantly from a 2004 study, as well as moderately well-expanded lung fields and stable granulomas in the left lung.  (*Id.* at 586.).

Imaging also showed a small right lung defect.  (*Id.* at 610).  However, an echocardiogram was normal, and a myocardial perfusion study was negative for underlying ischemia.  (*Id.* at 613).  It was determined Grant's chest pain was likely costochondritis, which the ALJ noted is a non-cardiac, benign condition.  (*Id.* at 42, 590).  Finally, in April 2012, myocardial perfusion imaging performed after Grant presented with chest pain revealed normal exercise SPECT myocardial perfusion images and normal left ventricular function.  (*Id.* at 593).

The ALJ also characterized Grant's arthritis as mild to moderate in severity.  (*Id.* at 42-43).  This characterization is also supported by substantial evidence.  In April 2004, Grant presented with bilateral knee pain and was diagnosed with acute gouty arthritis.  (*Id.* at 298-304).  In June 2005, he was treated for lower back pain that radiated into his right leg.  (*Id.* at 374-77).  In August 2010, an examination of Grant's extremities was normal and no swelling was observed.  (*Id.* at 522).  In September 2010, Grant complained of generalized body aches that had persisted for two months.  (*Id.* at 517).  Lower back tenderness and muscle spasms were observed, as was swelling and tenderness of the extremities.  (*Id.* at 519).  Grant was diagnosed with non-specific myalgia and arthritis.  (*Id.*).  Imaging of Grant's knees performed in October 2011 showed mild arthritic changes with marginal osteophytes in both knees.  (*Id.* at 551).  In February 2012, an examination of Grant's extremities showed a normal range of motion and no swelling or deformities.  (*Id.* at 646).  In March 2012, a physical examination revealed no CVA tenderness in Grant's back and that he moved all extremities with ease.  (*Id.* at 596).  Imaging showed mild to moderate bilateral tricompartmental degenerative changes with joint space narrowing and osteophyte formation.  (*Id.* at 612).  In May 2012, Grant reported his pain was present all the time and limited his activities of daily living.  (*Id.* at 671).  However, it was noted there still was no diagnosis for Grant's pain, which Grant had reported during doctor's visits in

March, May, and September 2011, as well as in January 2012.  (*Id.* at 671-76).  During the

hearing, Grant admitted surgery had not been recommended for his knees.  (*Id.* at 67).

In sum, the ALJ clearly articulated his reasons for discrediting Grant's testimony of his

symptoms and their limiting effects and that credibility determination is supported by substantial

evidence.

### B. Development of Record

In passing, Grant argues the ALJ should have obtained a consultative examination, and

because he did not do so, he failed to develop the record.  (Doc. 10 at 9).  "[An] ALJ has a duty

to develop the record fully and fairly."  *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

However, an ALJ "is not required to order a consultative examination as long as the record

contains sufficient evidence for the [ALJ] to make an informed decision."  *Ingram*, 496 F.3d at

1269.

As an initial matter, Grant's argument is without merit because the ALJ did order a

consultative examination and Grant failed to appear for that examination.  (Tr. at 530, 543).  A

claimant's failure to attend a consultative examination may result in a denial of disability

benefits.  20 C.F.R. §§ 404.1518(a), 416.918(a).  Furthermore, while a consultative examination

may have been beneficial, the undersigned cannot conclude a consultative examination was

necessary for the ALJ to make an informed decision. The ALJ had the benefit of medical records

for Grant spanning approximately eight years, and those records support the ALJ's conclusion

Grant is not disabled.

### V.   Conclusion

Having reviewed the administrative record and considered all of the arguments presented

by the parties, the undersigned find the Commissioner's decision is supported by substantial

evidence and in accordance with applicable law.   Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

      **DONE** this 23rd day of September, 2015.

                                     STACI  G. CORNELIUS
                                     U.S. MAGISTRATE JUDGE